### In re WEISSMAN.

District Court, D. Connecticut. January 14, 1929.

No. 4910.

George E. Beers and William L. Beers, both of New Haven, Conn., for petitioner.

Archibald Palmer and Maxwell Green, both of New York City, for trustee in bankruptcy.

THOMAS, District Judge. This matter is now before the court upon a supplemental hearing had before the special master pursuant to the remand of the Circuit Court of Appeals. 19 F.(2d) 769.

T. A. Shaw & Co. seek to reclaim certain goods from the trustees of the bankrupt estate. By agreement the property was sold and the proceeds have been deposited subject to final order of court.

On an involuntary petition filed November 21, 1919, Weissman was adjudicated a bankrupt. On September 26, 1919, the bankrupt placed an order for the purchase of goods with the claimant. The order was accepted and the goods delivered, part on November 14th and part on November 20th. Before accepting the order the claimant consulted R. G. Dun & Co. and obtained a credit report which set forth a copy of a financial statement issued by Weissman's office to Dun's agent in New Haven. This statement was dated August 11, 1919, and bore Weissman's typewritten signature, which was confirmed by his written statement on September 29th. The goods were sold in reliance upon this report.

To prove that the report contained a false statement of Weissman's liabilities, the claimant offered the schedules in bankruptcy which showed debts owing on November 21, 1919, of $1,300,000. Evidence was also introduced to show that the schedules were prepared by one of the bankrupt's attorneys who compiled the schedule of merchandise liabilities from the invoices which he obtained from the trustee's accountants. A tabulation of these invoices by the accountant showed an indebtedness on the date of the bankrupt's report to Dun & Co. far in excess of the amount set forth in that report. The Circuit Court of Appeals has held that the invoices were admissible in evidence to establish the fact that the report to Dun & Co. as to the amount of indebtedness on November 11, 1919, was false, and that by this evidence the claimant had established a prima facie case, which in the absence of rebuttal proof would entitle it to reclaim the merchandise delivered to Weissman, or the proceeds derived from the sale.

Since the decision of the Circuit Court of Appeals hearings have been held before the special master for the purpose of affording the trustees an opportunity to introduce evidence to rebut this prima facie case. The special master has certified the evidence taken in those hearings but with no conclusion by him respecting the sole question presented as to whether or not the trustees have succeeded in rebutting the prima facie case established by the claimant at the first trial; so the matter is here on first impression.

A careful reading of the opinion of the Circuit Court of Appeals impels the conclusion not only that the learned court is of the opinion that the claimant had established a prima facie case, but that this reclaimer should be granted unless the trustees are able to rebut the case thus established. It also is clear that the Circuit Court of Appeals, recognizing that the rights of general creditors are important, held that those creditors, through the trustees, should be given full opportunity to rebut the case already established, because, at the first hearing the trustees had no reason to introduce rebuttal evidence in view of the rulings made by the special master, and so sent the case back in order to allow the trustees full opportunity to be heard in reply to the case which that court held had been made out by the petitioner. So, as I view it, the only question to be here decided is whether the additional testimony submitted by the trustees before the special master rebuts the case made out by the reclaiming petitioner.

This evidence shows that the attorney who prepared Weissman's schedules obtained the invoices from the accountants, who in turn had obtained them by soliciting creditors; that the invoices were not obtained from Weissman's place of business; that Weissman left the preparation of the schedules entirely to his attorney and had no knowledge of the manner in which they were made up. It is the trustees' contention that this evidence negatives the trustworthiness of the invoices in so far as they purport to show the amount of indebtedness on a particular date, and that the decision of the Circuit Court of Appeals is based on the assumption that the invoices came from Weissman's place of business. With this contention I cannot

agree. The opinion of the Circuit Court of Appeals specifically refers to the fact that Weissman's attorney obtained the invoices from the accountants, as is clear from the opinion. Judge Swan said: "Mr. Alderman, one of the bankrupt's attorneys, testified that he prepared the schedules and that in ascertaining the merchandise liabilities he used exclusively invoices which he obtained from the trustees' accountants. Weissman swore to the schedules so prepared."

I think counsel for the trustees do not correctly interpret Judge Swan's opinion when they urge that the Circuit Court of Appeals assumed that the invoices came from Weissman's place of business. To support this contention they rely upon that part of the opinion which says: "Weissman kept no books. He used the invoices as he would have used his books to make up his sworn schedules."

Taken in connection with the earlier quotation from the opinion, it is perfectly clear that the learned judge who wrote the opinion meant that Weissman, knowing that he kept no books, was content to rely upon the information found in the invoices and did use those invoices from which his schedules were prepared just as he would have used his books and his own invoices if he had kept books and had all of the invoices at his place of business. Nowhere does the court indicate that the invoices came into the possession of the trustees through Weissman, and the new evidence given by Mr. Weissman and his attorney, Mr. Alderman, shows conclusively that the schedules were prepared, signed, and sworn to by Mr. Weissman from information furnished Alderman by the accountants for the trustees, which fact was the basis for the various conclusions reached by the Circuit Court of Appeals.

From the fact that Weissman swore to the schedules prepared from the invoices, the Circuit Court of Appeals held that Weissman admitted, not only the correctness of the schedules, but the correctness of the manner in which they were made up. It was further held that this admission was available against the trustees. I find nothing in the opinion of the Circuit Court of Appeals to indicate that its conclusion was based on the assumption that Weissman had at any time had the invoices in his place of business. Nor does the fact that Weissman had not personally checked the invoices vitiate the force of his admission that the schedules were correct, and therefore that the information upon which the schedules were prepared was also correct, as was decided by the Circuit Court of Appeals.

In the course of the last hearing before the special master, Weissman was called as a witness by the trustees and testified that the schedules were prepared by his attorney without his intervention, but he was not inquired of concerning the correctness of the invoices in so far as they purported to show indebtedness on November 11th and other dates.

I find nothing in the new evidence to rebut the prima facie case, and the petition is therefore granted.

Submit decree accordingly.